IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 27, 2004

## STATE OF TENNESSEE v. CLINTON WADE KETRON

**Direct Appeal from the Criminal Court for Knox County**
**No. 69967      Richard Baumgartner, Judge**

_____

**No. E2003-02455-CCA-R3-CD - Filed November 3, 2004**

_____

The Defendant, Clinton Wade Ketron, pled guilty to one count of operating a motor vehicle while adjudged to be a Habitual Motor Vehicle Offender (HMVO), a Class E felony, and one count of criminal impersonation, a Class B misdemeanor. Pursuant to a plea agreement the Defendant was sentenced to concurrent terms of one year for his felony HMVO conviction and six months for his misdemeanor criminal impersonation conviction. The trial court denied alternative sentencing and ordered the Defendant to serve his sentences in confinement. The Defendant raises only one issue on appeal: The trial court erred in sentencing the Defendant to serve his one year felony sentence with the Tennessee Department of Corrections and in sentencing him to six months in the county jail for his misdemeanor conviction instead of placing him on enhanced probation or imposing some other form of alternative sentence. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Joe M. Felknor, Knoxville, Tennessee, for the appellant, Clinton Wade Ketron.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Paula Ham, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### FACTS

On the evening of July 13, 1999, Detective Jim Murray of the Knoxville Police Department stopped the Defendant for driving on the wrong side of the road and driving with a defective taillight. The detective noticed that the Defendant had an odor of alcohol about him and observed other factors

in his face, eyes and speech that indicated he was intoxicated. The Defendant falsely identified himself as "Terry Ketron," who was later determined to be the Defendant's brother. A driver's license photo I.D. check revealed that the Defendant was actually Clinton Ketron, and additional background checks revealed the Defendant had been adjudicated a Habitual Motor Vehicle Offender.

An indictment was returned against the Defendant alleging the commission of two criminal offenses pertaining to the July 13, 1999, incident. Count one alleged the Defendant unlawfully and feloniously drove a motor vehicle after having been adjudged to be a Habitual Motor Vehicle Offender in violation of Tennessee Code Annotated 55-10-616.[1] Count two alleged the Defendant unlawfully and with intent to defraud assumed a false name when arrested by Detective Jim Murray in violation of Tennessee Code Annotated 39-16-301.[2]

In June of 2003, the Defendant and the State entered into a written plea agreement whereby the Defendant would plead guilty to both charges, and the State would drop a separate felony HMVO charge and a misdemeanor charge of driving on a revoked license, both pending against the Defendant from a separate incident that occurred in November of 2000. The plea agreement further stipulated that the Defendant would receive one year for the felony HMVO conviction as a Range I standard offender, and would receive a six-month sentence for his misdemeanor criminal impersonation conviction to be served concurrently with the one year felony sentence. While the plea agreement provided that the Defendant would be considered as a candidate for probation, it did not specify the manner in which the sentences would be served but rather left this determination to the discretion of the trial court.

Following a plea agreement submission hearing in June of 2003, the trial court accepted the plea agreement and found the Defendant guilty of the two offenses. On September 5, 2003, the trial court held a sentencing hearing. The State presented as a witness Officer Flores of the Knoxville Police Department, who testified that on the evening of June 3, 2003, he observed the Defendant top a hill and then stop the vehicle he was driving very abruptly when he came into view of the police. Officer Flores next observed the Defendant swapping seats with the passenger as he approached the vehicle. The Defendant could not produce a valid driver's licence and was placed in custody.

At the conclusion of the sentencing hearing, the trial court announced its findings and ruled from the bench. After first acknowledging that it had "the power to put [the Defendant] on enhanced probation" if it so chose, the court found that the Defendant's criminal history and inability to abide by the conditions of his release program, as evidence by his continued unlawful operation of a motor vehicle, weighed against granting probation. The court entered a judgment sentencing the Defendant to one year in the custody of the Tennessee Department of Correction with release eligibility after serving 30% of his sentence for the felony HMVO conviction, and six months for the misdemeanor

---

[1]"It is unlawful for any person to operate any motor vehicle in this state while the judgment or order of the court prohibiting the operation remains in effect." Tenn. Code Ann. § 55-10-616(a).

[2]"A person commits criminal impersonation who, with intent to injure or defraud another person: Assumes a false identity." Tenn. Code Ann. § 39-16-301, (a)(1).

criminal impersonation conviction to be served concurrently with the felony sentence. The Defendant timely filed a Notice of Appeal.

ANALYSIS

The Defendant argues that the trial court erred in sentencing him to serve his effective sentence of one year in a state penitentiary instead of on probation or through split confinement with time served in the Knox County Jail. The Defendant further asserts that the trial court's ruling should not be presumed correct because it made essential findings of fact not supported by the record.[3] Finally, the Defendant claims that both the evidence and a proper application of Tennessee's sentencing procedures would require alternative sentencing for the Defendant. We disagree.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record,

---

[3]The Defendant claims that the trial court erred when it found the Defendant had a felony HMVO conviction in Blount County, and that his June 3, 2003, HMVO violation occurred while the sentencing hearing was "pending." The Defendant argues that the pre-sentence report relied on by the trial court identifies the Blount County violation only as "HMO" and is therefore inconclusive. However, we find that this conviction appears to be a felony as it carried a sentence of one year and that the trial judge is presumed to recognize and understand the codes routinely used in pre-sentence reports. We further note that the Defendant presented no evidence indicating he was not convicted of a felony HMVO violation in Blount County.

The Defendant also claims that because his June 3, 2003, HMVO violation occurred "almost two (2) weeks prior" to his entry of a guilty plea, (which, he argues, is required before "sentencing" can begin) the violation technically did not occur while the sentencing hearing was "pending" as stated by the court. We find this semantical argument unpersuasive.

then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904 app. at 926-27 (Tenn. 1998). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401 Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

Nevertheless, a defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). See also State v. Fields, 40 S.W.3d 435, 440 (Tenn. 2001). The following considerations provide guidance regarding what constitutes "evidence to the contrary" which would rebut the presumption of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. See Tenn. Code Ann. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. See id. § 40-35-103(5).

The trial court denied the Defendant alternative sentencing because of the Defendant's criminal history, because he was a poor candidate for rehabilitation as evidenced by his propensity for continued criminal violations while not incarcerated, and to protect the public. The trial court also clearly placed on the record its reasons for denying alternative sentencing. After considering the evidence presented at the sentencing hearing, the trial judge made the following findings:

> He [the Defendant] has a--as I count them, one, two, three, four, five, six, seven, eight, nine, ten, eleven--eleven prior misdemeanors; one, two, three, four, five of which are DUIs. He has two prior felony convictions, one in 1978 for which he went to the penitentiary and a violation of habitual motor vehicle offender law in 1996 over in Blount County. He was charged with this offense which occurred in 2000 and has now suffered a

-4-

conviction for violation of habitual motor vehicle offender law which he is here today to be sentenced on.

Pending this sentencing hearing--this case went on for a long time, and pending this sentencing hearing--the Court finds there's reasonable basis based on Officer Flores' testimony to conclude that Mr. Ketron was again out driving while this sentencing hearing was pending, in violation of his driving privileges having been revoked.

I think it's time for you to go to the penitentiary, Mr. Ketron.

Furthermore, in the "special conditions" section of the Judgment, the trial court noted that it denied the Defendant's application for probation because the evidence required imprisonment of the Defendant "for his own best interest and especially for the protection of the public."

We find sufficient evidence in the record to support the decision of the trial court to deny the Defendant a sentencing alternative to incarceration and find no reason to doubt the correctness of the determinations made by the trial court. The record on appeal reflects that the Defendant had an extensive criminal history that evidenced a clear disregard for societal laws and morals. At the time of his sentencing the Defendant had a criminal record that spanned four decades with no less than eleven misdemeanor convictions, two felony convictions, and several charges pending. His convictions ranged from simple traffic violations to five DUIs and drug possession. Moreover, the Defendant has a history of unlawfully driving and then being untruthful to the police when caught, as evidenced by his two recent convictions for criminal impersonation, one in the case at hand and another in 2000. This evidence of the Defendant's lengthy and continually growing criminal history support a sentence of incarceration. See Tenn. Code Ann. § 40-35-102(5); see also State v. Bottoms, 87 S.W.3d 95, 102-03 (Tenn. Crim. App. 2001) (the defendant's history of criminal conduct rebutted his presumed eligibility for probation and supported incarceration for his Class C felony conviction to which he had entered a guilty plea).

The evidence on record supports the trial court's sentence of confinement because previous less restrictive measures had been unsuccessful. See Tenn. Code Ann. § 40-35-103(1)(C). The evidence also supports confinement because past efforts at rehabilitation without resorting to confinement have failed, rendering the Defendant a poor candidate for rehabilitation. See Tenn. Code Ann. §§ 40-35-102(5); 40-35-103(5). See also State v. Bottoms, 87 S.W.3d at 104-05 (potential for rehabilitation or lack thereof was proper consideration in a decision to deny alternative sentencing to a defendant who was presumptively eligible for probation where the defendant was unable to refrain from illegal activity); State v. Elam, 7 S.W.3d 103, 106 (Tenn. Crim. App. 1999) (the defendant's inability to abide by sentences involving release into the community supported trial court's denial of alternative sentencing).

Finally, the evidence on record supports the trial court's incarceration of the Defendant to protect the public. In his appellate brief, the Defendant admits it is "obvious" from his criminal record that he has two problems: "[the Defendant] has clearly had an alcohol abuse problem and he has continued to drive contrary to the court order declaring him to be an HMVO and making it illegal for him to operate a vehicle." Additionally, the trial court recognized that five of the Defendant's eleven misdemeanor convictions were for DUIs. The evidence on record also reveals that in the July

1999 incident that led to the Defendant's felony HMVO conviction in the case at hand, the Defendant exhibited signs of being intoxicated. The evidence on record reveals a clear pattern of criminal conduct on the part of the Defendant which places the public safety at risk. The trial court was well within its discretion to sentence the Defendant to confinement for the protection of the public. See Tenn. Code Ann. § 40-35-103(1)(A).

We find the Defendant has failed to demonstrate that the sentence imposed by the trial court was erroneous. We further find that the trial court complied with the sentencing guidelines and its finding are supported by the record. Accordingly, we conclude that the trial court neither erred nor abused its discretion. This issue has no merit.

CONCLUSION

Having found no error, we affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE